IN THE UNITED STATES DISTRICT COURT

FOR THE WESTERN DISTRICT OF WISCONSIN

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

KENDRA MILLER,

                      Appellant,                    OPINION AND ORDER

    v.

                                                           09-cv-581-bbc

UNITED STATES OF AMERICA,
acting through Rural Development
Rural Housing Service (RHS), successor in
interest to the United States Department
of Agriculture,

                      Appellee.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

Debtor-appellant Kendra Miller appeals an order of the United States Bankruptcy Court for the Western District of Wisconsin denying her motion for summary judgment and awarding judgment in favor of appellee United States of America on her claim that appellee violated the automatic stay in her bankruptcy proceedings by wrongfully seizing her federal income tax refund and applying the funds to the debt she owed appellee. At issue in this appeal is 1) the extent of the government's setoff rights under federal bankruptcy law, 11 U.S.C. § 553, and the United States Department of the Treasury offset program, 26 U.S.C. § 6402(d) and 31 U.S.C. § 3720A; and 2) whether in exercising the setoff, the government

1

willfully violated the automatic stay, entitling Miller to damages, fees and costs under 11 U.S.C. § 362(k). (Although both Miller and the bankruptcy court cite the damages provision as § 362(h), that section was redesignated as § 362(k) in 2005). Because I agree with the bankruptcy court that Miller properly exercised valid setoff rights and did not willfully violate the automatic stay, I will affirm its denial of her motion for summary judgment and entry of judgment for the government.

The following summary of relevant undisputed facts and proceedings is drawn from the record of the proceedings before the bankruptcy court.

FACTS

On March 31, 2005, appellant Kendra Miller contracted with a bank for the purchase of a home. The Rural Development Rural Housing Service, an agency of appellee United States of America, guaranteed her residential mortgage. When Miller defaulted on the mortgage, the bank foreclosed on the property and sold it, leaving a $27,000 deficiency, which the bank presented to the government under the guaranty. The government (through the Rural Housing Service) paid the claim and thereafter sought payment of the deficiency from Miller. As part of its collection efforts, the government informed Miller that the debt would be certified to the Secretary of the Treasury in accordance with the Treasury offset program, which allows any federal agency to seek to apply a debtor's tax refund to an unpaid

2

debt. When Miller did not contest the certification within the statutory notice period, the government notified the Treasury Department of its claim.

Miller filed a petition in a Chapter 7 bankruptcy in the Western District of Wisconsin on March 11, 2008. In re Miller, No. 08-11097 (Bankr. W.D. Wis.). Under 11 U.S.C. § 362, an automatic stay issued, enjoining creditors from collecting Miller's delinquent accounts. The government was scheduled as a creditor in Miller's petition and received notice of the case and the imposition of the automatic stay.

The Debt Management Servicing Center Financial Management Service is a bureau of the United States Department of Treasury that manages debt collection for the federal government. On April 4, 2008, the servicing center seized $1,393.00 of Miller's 2007 federal income tax refund on the government's behalf without first seeking relief from the automatic stay as required under § 362. The Department of Treasury's computer automatically transferred Miller's tax overpayment to the government. Initially, the electronic transfer was credited to Miller's loan account but the credit was manually reversed later and the funds were transferred to an "unapplied funds" account. On its own initiative, the government has continued to hold Miller's overpayment in the unapplied funds account, pending resolution of this appeal.

Ordinarily, the government's computer program would have placed an automatic halt on the setoff when Miller filed bankruptcy. However, her debt arose as a result of the

3

government's payment of a guaranty claim. The government's computer is not programmed to prevent a setoff under such circumstances. On April 14, May 12 and May 14, 2008, Miller's attorney wrote the servicing center, alleging that the tax overpayment was intercepted wrongfully and demanding its return. The automatic stay was terminated on July 3, 2008, when the bankruptcy court issued a general discharge order. On July 11, 2008, Miller filed an adversary proceeding in the bankruptcy court, claiming that she was entitled to damages for the government's willful violation of the automatic stay. Miller v. United States of America, Adv. No. 08-118 (Bankr. W.D. Wis.).

On April 1, 2009, Miller moved for summary judgment, arguing that because she claimed her 2007 tax refund as exempt under § 522(c) in her bankruptcy filing, the government did not have the right to exercise a setoff against the tax refund and willfully violated the automatic stay, justifying an award of fees and costs under § 362(k). The government opposed the motion and requested entry of summary judgment in its favor. On July 8, 2009, United States Bankruptcy Judge Thomas Utschig entered an order denying Miller's motion for summary judgment and granting judgment in favor of the government. In re Miller, 414 B.R. 481 (Bankr. W.D. Wis. 2009).

In its decision, the bankruptcy court noted that although 11 U.S.C. § 553 does not create a setoff right, it preserves whatever setoff rights may have existed at the time of filing. The court rejected Miller's argument that because § 522(c) does not make a specific

4

exception for the setoffs described in § 553, it trumps § 553 and makes setoff rights subordinate to an uncontested exemption claim. After reviewing a number of other bankruptcy court decisions, the bankruptcy court concluded that a creditor's right to offset a mutual debt is not affected by other provisions of the bankruptcy code, except in certain rare instances that did not apply in Miller's case. In addition, it found that the government did not violate the automatic stay willfully or cause appellant to suffer compensable damages when it exercised the setoff rights to which it was entitled.

OPINION

Under Rule 8013 of the Federal Rules of Bankruptcy Procedure, a district court on appeal may affirm, modify or reverse a bankruptcy judge's judgment, order or decree or remand with instructions for further proceedings. A bankruptcy court's factual findings are reviewed for clear error; its conclusions of law are reviewed de novo. Mungo v, Taylor, 355 F.3d 969, 974 (7th Cir. 2004); In re Thirtyacre, 36 F.3d 697, 700 (7th Cir. 1994). At issue in this case is what setoff rights, if any, the government was entitled to exercise with respect to Miller's federal income tax overpayment; whether any such setoff rights trump her claimed exemption; and whether the government willfully violated the automatic stay, entitling Miller to an award of damages, fees and costs.

5

A. Extent of the Government's Setoff Rights

Under the bankruptcy code, 11 U.S.C. § 553(a), mutual debts arising before the commencement of a bankruptcy proceeding may be offset, subject to certain exceptions. In re United Air Lines, Inc., 438 F.3d 720, 730 (7th 2006). "The right of setoff (also called 'offset') allows entities that owe each other money to apply their mutual debts against each other, thereby avoiding the 'absurdity of making A pay B when B owes A.'" Citizens Bank of Maryland v. Strumpf, 516 U.S. 16, 18 (1995) (quoting Studley v. Boylston National Bank of Boston, 229 U.S. 523, 528 (1913)). Although § 553(a) does not expand or constrict the common law right of setoff, it preserves whatever setoff rights a party may have possessed outside of bankruptcy before the bankruptcy petition was filed. United States v. Maxwell, 157 F.3d 1099, 1102 (7th Cir. 1998).

In this case, the government claims a valid right of setoff with respect to Miller's 2007 federal income tax overpayment under the Treasury offset program, 26 U.S.C. § 6402(d) and 31 U.S.C. § 3720A. That program allows a government agency with a legally enforceable debt to notify the Secretary of Treasury of the debt, and if there later comes a time when the Secretary is indebted to the debtor for a tax overpayment, the Secretary must pay the overpayment to the agency for application toward the debtor's debt to the agency. As the bankruptcy court recognized, courts generally consider the federal government to be a single-entity that is entitled to set off one agency's debt to a party against that party's debt

6

to another agency. Maxwell, 157 F.3d at 1102 (citing Cherry Cotton Mills, Inc. v. United States, 327 U.S. 536, 539-40 (1946); In re Turner, 84 F.3d 1294, 1296 (10th Cir. 1996) (en banc)). Federal courts of appeals that have reached the issue have applied this single-entity rule in bankruptcy proceedings. Id. (citing In re Hal, 122 F.3d 851, 853 (9th Cir. 1997); In re Turner, 84 F.3d at 1296-97; In re Chateaugay Corp., 94 F.3d 772, 778 (2d Cir. 1996)).

The government asserts correctly that both Miller's mortgage-related debt to the government and its tax overpayment debt to Miller preceded Miller's filing of her bankruptcy petition. In re Kadrmas, No. 00-31138, 2000 WL 33364195, *1 (Bankr. W.D. Sept. 19, 2000) (tax refunds are owing on December 31 of year in which overpayment is made). Therefore, as the bankruptcy court determined in this case, the government had a valid setoff right to Miller's tax overpayment under § 553.

The crux of Miller's argument is that the government lacked the authority to exercise its setoff right because she had claimed her 2007 tax overpayment as exempt property under 11 U.S.C. § 522(c). Section 522(c) provides that except in certain circumstances not applicable in this case

> Unless the case is dismissed, property exempted under this section is not liable during or after the case for any debt of the debtor that arose, or that is determined under section 502 of this title as if such debt had arisen, before the commencement of the case. . .

7

Courts are split over whether § 522(c) trumps setoff rights preserved by § 553. Kadrmas, 2000 WL 33364195, *3.

As the bankruptcy court and the parties recognize, more courts have held that exempt property is not subject to setoff, than have reached the opposite conclusion. E.g., In re Pace, 257 B.R. 918, 920 (Bankr. W.D. Mo. 2000); United States v. Killen (In re Killen), 249 B.R. 585, 588 (Bankr. D. Conn. 2000); In re Jones, 230 B.R. 875, 879 (Bankr. M.D. Ala. 1999); Alexander v. Commission, IRS (In re Alexander), 225 B.R. 145, 149 (Bankr. W.D. Ky. 1998); In re Thompson, 182 B.R. 140, 153-54 (Bankr. E.D. Va. 1995); In re Swickard, 133 B.R. 902 (Bankr. S.D. Ohio 1991); In re Cole, 104 B.R. 736, 739-40 (Bankr. D. Md. 1989); In re Wilde, 85 B.R. 147, 149 (Bankr. D.N.M. 1988). Generally, courts holding the majority view reason that (1) because § 522(c) applies to "any debt," allowing the government to exercise a setoff under § 553 would render § 522(c) meaningless; (2) the legislative history of § 522(c) shows that Congress rejected an earlier version of the statute that would have allowed exempt property to remain liable for discharged tax debt; and (3) the bankruptcy code's "fresh start" policy favors protecting certain assets of a debtor to insure that the debtor retains the basic means to survive. Kadrmas, 2000 WL 33364195, *3 (summarizing majority case holdings); Alexander, 225 B.R. at 149-50. However, later opinions, including those from the United States Bankruptcy Courts for the Western District of Kentucky (which decided Alexander) and the Western District of Wisconsin,

8

reject this position.  In re Gould, 401 B.R. 415, 427-28 (B.A.P. 9th Cir. 2009); In re Houchens, 384 B.R. 472, 476 (Bankr. W.D. Ky. 2008); United States Internal Revenue Service v. White, 365 B.R. 457, 463 (Bankr. M.D. Pa. 2007); In re Jones, 359 B.R. 837 (Bankr. M.D. Ga. 2006); Kadrmas, 2001 WL 33364195, *3; In re Baucom, 339 B.R. 504, 506-07 (Bankr. W.D. Mo. 2006); In re Bourne, 262 B.R. 745, 754 (Bankr. E.D. Tenn. 2001).

Following the holding in Kadrmas, the bankruptcy court rejected the majority view in this case and looked to the plain language of § 553, which provides that "this title does not affect any right of a creditor to offset a mutual debt."  The court observed that allowing § 522(c) to limit a creditor's setoff rights would contradict the court of appeals' finding that the bankruptcy code neither expands nor constricts the common law right of setoff. Maxwell, 157 F.3d at 1102.  Usually setoff rights are denied only in situations involving fraud or collusion.  Id. at 1100.

I agree with the bankruptcy court's conclusion.  Although §§ 522 and 553 are in apparent conflict and should be interpreted to give effect to the whole act, Jove Engineering, Inc. v. Internal Revenue Service, 92 F.3d 1539, 1559 (11th Cir. 1996), allowing a setoff under § 553 does not nullify § 522(c).  As noted by the bankruptcy court, debtors can still exempt property from the reach of creditors who do not possess pre-petition claims.  Miller, 414 B.R. at 484 (citing Wiegand, 199 B.R. at 642).  Although it is true that the purpose of

9

the exemption provision is to allow a debtor to reserve property to make a "fresh start" after bankruptcy, allowing debtors to retain all of their tax overpayments would result in a windfall to them. Kadrmas, 2000 WL 33364195, *4-5 (citing In re Munson, 248 B.R. 343, 346 (C.D. Ill. 2000)); see also In re Pleasant, 320 B.R. 889, 894 (N.D. Ill. 2004) (debtor's right to fresh start does not include right to bar government from exercising setoff right in tax overpayment). Further, § 553 follows § 522 in the bankruptcy act, indicating that Congress meant for § 553 to qualify § 522. Kadrmas, 2000 WL 33364195, *4 (citing In re Pieri, 86 B.R. 208, 212-13 (B.A.P. 9th Cir. 1988) (it is long-settled rule of statutory construction that where there is irreconcilable conflict between parts of the same act, the last in order of arrangement controls)).

The bankruptcy court's other primary rationale for rejecting the majority view is equally convincing. A separate but related section of the bankruptcy code, 11 U.S.C. § 542(b), allows a creditor with a valid setoff right to retain exempt property *during* the bankruptcy proceeding rather than turning the property over to the trustee. Courts holding the minority view reason that "if a creditor's setoff right is not defeated by exemption pursuant to § 542(b) while a bankruptcy proceeding is in progress, then a creditor's setoff right is not defeated by exemption pursuant to § 553(a) after a bankruptcy proceeding is over." In re Wiegand, 199 B.R. 639, 643 (W.D. Mich. 1996) (citing Posey v. I.R.S., 156

10

B.R. 910, 916 (W.D.N.Y. 1993)); see also In re Eggemeyer, 75 B.R. 20, 22 (Bankr. S.D. Ill. 1987) (holding same).

In sum, although courts disagree whether a creditor can exercise a setoff right against property that a debtor claimed as exempt, I find that the opinions of the courts addressing this issue in more recent decisions, including the bankruptcy courts in the Western District of Wisconsin, are more persuasive. Therefore, I will affirm the bankruptcy court's decision that the government could exercise its setoff right in Miller's 2007 tax overpayment even though she had claimed it as exempt.

### B. Automatic Stay

Filing a petition for bankruptcy triggers the automatic stay provisions of 11 U.S.C. § 362. In re Radcliffe, 563 F.3d 627, 630 (7th Cir. 2009). The stay "prevents all pre-petition creditors from taking any action to collect their debts . . . . even if the creditor has a mortgage or security interest in the property of the debtor." Matter of Vitreous Steel Products Co., 911 F.2d 1223, 1231 (7th Cir. 1990). A stay may be terminated or lifted for cause "[o]n request of a party in interest and after notice and a hearing." § 362(d)(1). The stay terminates if the case is closed, dismissed or a discharge is granted or denied. § 362(c)(2). In this case, appellee did not move for relief from the stay as required under Fed. R. Bankr. P. 4001. Because the bankruptcy court determined that appellee's violation of the

statute was not willful and did not injure appellant, it denied appellant's request for damages, fees and costs under § 362(k).

"A willful violation does not require specific intent to violate the stay; it is sufficient that the creditor takes questionable action despite the awareness of a pending bankruptcy proceeding." Radcliffe, 563 F.3d at 631 (citing In re Price, 42 F.3d 1068 (7th Cir. 1994)) (finding willful violation where creditor acted with knowledge of bankruptcy proceeding). Generally, a violation is considered willful when a creditor acts intentionally. In re Stacker, 2009 WL 3756551, *2 (Bankr. S.D. Ill. Nov. 3, 2009) (citing In re Betts, 165 B.R. 233 (Bankr. N.D. Ill. 1994); Mercer v. D.E.F., Inc., 48 B.R. 562 (Bankr. D. Minn. 1985)); In re Welch, 296 B.R. 170 (Bankr. C.D. Ill. 2003). "[A] Court will not impose sanctions under § 362(k) (formerly § 362(h)) when there has been a mere technical violation of the stay." Id. (citing In re Zunich, 88 B.R. 721 (Bankr. W.D. Pa. 1988)). Cf., In re Thongta, 401 B.R. 363, 368 (Bankr. E.D. Wis. 2009) (quoting Susan V. Kelley, Ginsberg & Martin on Bankruptcy, § 3.01B (5th ed. 2008)) ("Not even a good faith mistake of law or a legitimate dispute as to legal rights relieve a willful violator of the consequences of its act.").

In this case, although the government was sent a notice of Miller's bankruptcy filing, a glitch in its computer program failed to place an automatic halt on the setoff. Miller points out that her attorney later contacted the government on three different occasions to demand the return of Miller's overpayment. The government dismisses these notifications as

12

meaningless because the seizures had occurred before they they were made. It argues also that because it had a valid setoff right and no obligation to turn over the funds to Miller, she was not injured by its failure to request relief from the stay.

Although another court may have reached a different decision in this case with respect to the government's willfulness, e.g., Price, 42 F.3d at 1071 (IRS notice generated by computer error constituted technical but willful violation of stay because government aware of bankruptcy and received several pleas to halt further collection), it was reasonable for the bankruptcy court to conclude that the government did not have actual knowledge of the filing and that its error was not intentional or deliberate. Moreover, Miller did not suffer an actual loss. She says she had planned to use the overpayment for household expenses, but that doesn't mean she was entitled to do so. Even though the government redirected her funds earlier than planned, it was the one that was entitled to the funds. Therefore, I find that the bankruptcy court did not abuse its discretion in concluding that the government's conduct was not willful. Radcliffe, 390 B.R. at 898 (reviewing bankruptcy court's punitive damages award under § 362(k) for abuse of discretion).

ORDER

IT IS ORDERED that the decision of the United States Bankruptcy Court for the Western District of Wisconsin denying appellant Kendra Miller's motion for summary

13

judgment and awarding summary judgment to appellee United States of America is AFFIRMED.

Entered this 12th day of January, 2010.

                                      BY THE COURT:

                                      /s/

                                      _____
                                      BARBARA B. CRABB
                                      District Judge